IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID IRVIN MOBLEY, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 2:14cv618-WC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

**I.    INTRODUCTION**

David Irvin Mobley, Jr., ("Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*, on November 8, 2010. His application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of March 1, 2007, through December 31, 2010, the last date through which he was insured. Plaintiff appealed to the Appeals Council, which rejected his request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See*

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 8).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

>An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical

---

[3] *McDaniel* is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title XVI are appropriately cited as authority in Title II cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F.App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

3

Vocational Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . . No

---

[4]  *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

4

> similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was twenty-nine years old at the time of the hearing before the ALJ, and had completed one year of college education. Tr. 27, 41. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of March 1, 2007 through his date last insured of December 31, 2010." Tr. 25. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "coronary artery disease, status post myocardial infarctions in 2007 and 2011; posttraumatic stress disorder; sleep apnea; and asthma (shortness of breath)." *Id.* At Step Three, the ALJ found that, during the relevant period, Plaintiff "did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" *Id.* Next, the ALJ articulated Plaintiff's RFC, in pertinent part, as follows:

> the claimant had the residual functional capacity to perform medium work[ . . . ,] except with the following additional non-exertional limitations: due to his mental impairment, he is limited to simple tasks; he can concentrate and persist for 2 hour periods to assemble an 8-hour workday in a well-spaced work environment with customary breaks but may miss 1-2 days per month due to psychological symptoms; contact with others should involve supportive supervisory feedback, he can work with a few familiar co-

5

>workers, and he can have only casual contact with the public; and work place changes should be gradual.

*Id.* at 26. Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff "was unable to perform any past relevant work[.]" *Id.* at 31. Finally, at Step Five, and relying upon the testimony of the VE, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed" during the relevant period. *Id.* The ALJ identified several representative occupations, including "packager," "store laborer," and "tagger." *Id.* at 32. Accordingly, the ALJ determined that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from March 1, 2007, the alleged onset date, through December 31, 2010, the date last insured[.]" *Id.*

## IV.  PLAINTIFF'S CLAIM

Plaintiff presents one issue for the court to consider in its review of the Commissioner's decision: whether the ALJ failed to give adequate consideration to Plaintiff's alleged lower back and neck condition as a medical impairment." Pl.'s Br. (Doc. 11) at 2. In his "Discussion" section, he clarifies his contention as follows: "The ALJ did not give adequate consideration to plaintiff's alleged lower back and neck conditions. If the ALJ had given adequate consideration to the back and neck condition, it may have resulted in a different finding regarding Plaintiff's RFC and may have

6

resulted in a different and favorable or partially favorable outcome in the hearing decision." *Id.* at 5.

## V.   DISCUSSION

Plaintiff argues that the "ALJ erred by not appropriately considering the medical evidence of record and plaintiff's testimony pertaining to plaintiff's lower back and neck problems. Additionally, the ALJ erred by not explaining the findings relating to plaintiff's lower back and neck problems and the severity of those problems." Pl.'s Br. (Doc. 11) at 5. Defendant claims that substantial evidence supports the ALJ's determination about Plaintiff's RFC, and that Plaintiff "has cited no evidence establishing any limitations attributable to [his neck and back pain] beyond the limitation to medium work found by the ALJ[,]" and, furthermore, "even if he had a back or neck impairment, that such impairment would have prevented him from performing the occupations identified by the VE, each of which, standing alone, would represent a significant number of jobs in the national economy." Def.'s Br. (Doc. 12) at 8-9.

Plaintiff cites many instances in the record which appear to reflect both Plaintiff's subjective complaints about neck or back issues and that he was assessed by the Veteran's Administration with a ten percent service-connected disability rating based on such conditions. Pl.'s Br. (Doc. 11) at 4. However, Plaintiff does not cite to any record evidence demonstrating any limitation imposed by the conditions, much less one more restrictive than that found by the ALJ. Indeed, upon the court's review, only what

7

appears to be a December 7, 2006, progress note from Central Alabama Veteran's Health suggests any kind of vague limitation on Plaintiff's functional abilities as a result of his neck or back pain, and even that note is in reference to older records and remedial actions from Plaintiff's time in the military.  *See* Tr. 399 ("MS: Back pain – noted in military report was placed on limitation of duty X 2, sharp shooting pain, limitation of duty ie @ 30 day intervals").  Nor does Plaintiff point to any portion of the record indicating that he actually received any treatment, including medications, for his back or neck conditions.  In short, the record is devoid of evidence establishing any significant limitation on Plaintiff's ability to function attributable to his back or neck conditions.

Considering the lack of objective medical records or opinion evidence establishing that Plaintiff's back or neck conditions cause any significant limitations on his ability to work, Plaintiff's subjective testimony about pain caused by the conditions assumes substantial import in his effort to prove his disability.  However, even Plaintiff's testimony on this point is equivocal.  At the hearing before the ALJ, Plaintiff's attorney asked him to list the "health problems that . . . are keeping you from working[.]"  Tr. 44.  Plaintiff responded, "[h]eart disease, post-traumatic stress disorder.  I have obstructive sleep apnea, and I have very severe asthma."  *Id.*  On further prompting from the attorney, Plaintiff admitted that he has "had some complaints of lower back and neck problems[.]"  *Id.*  He testified that his back issues have been "an ongoing process[,]" but that the neck issues have been "kind of isolated."  *Id.*  Plaintiff was next asked which of

8

his health conditions "are the worst as far as the symptoms they cause and limitations on your ability to function?" *Id.* at 44-45. He responded that the most limiting of his conditions is his heart disease, followed by, in order, his post-traumatic stress disorder, sleep apnea, and asthma. *Id.* at 45. Thus, Plaintiff did not specifically refer to any limitation caused by his back or neck conditions and, indeed, he plainly described his other conditions—namely, those that the ALJ found to be severe impairments—as most problematic for his ability to work. Later in his testimony, Plaintiff was asked how long he can stand on his feet before needing a break. *Id.* at 54. He responded "about 20 to 25 minutes." *Id.* When asked to explain, he said that his "lower back start hurting. I just feel like – probably feel a little overwhelmed because of my PTSD. And depending on the temperature, I don't know." *Id.* Apart from this vague association of Plaintiff's back pain with some functional limitation affecting his ability to stand for prolonged periods, Plaintiff's testimony does not explicitly attribute any limitation of function to his back or neck conditions.

While reviewing the medical evidence in the record, and presumably in view of the many record notations of some back or neck issue in Plaintiff's records, the ALJ remarked that Plaintiff has "been treated for hypertension, lower back pain and neck problems[.]" Tr. 27. In addition, the ALJ recognized Plaintiff's testimony that his back pain causes him to take breaks from standing after twenty to twenty-five minutes. *Id.* However, the ALJ further found that, consistent with Plaintiff's own testimony,

9

Plaintiff's "worst problems, however, are his heart problems and PTSD." *Id.* As such, it is apparent that the ALJ acknowledged Plaintiff's history of back and neck problems and recognized the full extent of Plaintiff's testimony about the conditions. Moreover, in enunciating Plaintiff's RFC, the ALJ explained that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" Tr. 26. Ultimately, the ALJ simply determined that Plaintiff's testimony about the limiting effects of his impairments were not fully credible. Tr. 28.

  As best the court can tell, Plaintiff faults the ALJ for failing to "include Plaintiff's lower back and neck problems among the medically determinable impairments." Pl.'s Br. (Doc. 11) at 4. First, as set forth above, it is apparent that the ALJ did indeed refer to Plaintiff's neck and back problems while reviewing Plaintiff's medical impairments, but that the ALJ did not find such problems to constitute severe impairments. Tr. 27. To the extent Plaintiff is therefore simply challenging the ALJ's failure to find his back and neck problems to be severe impairments, Plaintiff is not entitled to relief from the ALJ's decision. Plaintiff has not directed the court to any objective medical evidence suggesting that the conditions have any more than a minimal effect on his ability to do basic work activities. In any event, because the ALJ found that Plaintiff indeed suffers from several severe impairments, the ALJ discharged his obligations at Step Two and his failure to find Plaintiff's back and neck issues to be severe impairments is, at most,

10

harmless error considering the ALJ's subsequent findings at Steps Three and Four of the sequential evaluation process. *See Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 842 (11th Cir. 2014).

At bottom, the record indicates that the ALJ recognized the limited medical evidence concerning Plaintiff's back and neck conditions, as well as Plaintiff's scant and vague testimony about the limiting effects of the conditions. As set forth in the ALJ's decision, the ALJ simply did not agree that the conditions cause any limitation to Plaintiff's ability to work beyond the RFC articulated by the ALJ. Moreover, Plaintiff points to no evidence in the record, including opinion evidence, establishing that such conditions indeed do cause such limitations, or even that he has received even minimal treatment for the conditions. The ALJ sufficiently discharged his duty in reviewing the medical evidence and determining whether and how Plaintiff's impairments affect his ability to work. Substantial evidence supports the ALJ's decision that Plaintiff was not under a disability during the relevant time period.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 3rd day of June, 2015.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE